**MCKESSON INFORMATION SOLUTIONS LLC,**
Plaintiff,

v.

**The TRIZETTO GROUP, INC., Defendant.**

No. CIV. 04–1258–SLR.

United States District Court, D. Delaware.

April 5, 2006.

---

Thomas J. Allingham II, Esquire and Michael A. Barlow, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for Plaintiff. Of Counsel: Jeffery G. Randall, Esquire, David W. Hansen, Esquire, Michael C. Hendershot, Esquire and Jon V. Swenson, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, CA.

Jack B. Blumfeld, Esquire and Rodger D. Smith II, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, for Defendant. Of Counsel: Jeffrey T. Thomas, Esquire, David A. Segal, Esquire and Michael A. Sitzman, Esquire of Gibson, Dunn & Crutcher LLP, Irvine, CA.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On September 13, 2004, McKesson Information Solutions LLC ("plaintiff") filed this action against The TriZetto Group, Inc. ("defendant") for infringement of certain claims of United States Patent No. 5,253,164 ("the '164 patent"). (D.I. 1) The asserted claims are 1–6 and 8–16 of the '164 patent. Before the court are plaintiff's motion for summary judgment of infringement of claims 3, 6, 15 and 16 of the '164 patent and defendant's motion for summary judgment of noninfringement of the asserted claims of the '164 patent.

## II. Background

Physicians receive payment for the medical services provided to a patient by submitting bills, known as medical claims, to insurance companies, health maintenance organizations (HMOs), preferred provider organizations (PPOs) and other health benefit providers. (D.I. 153 at 3) A medical claim typically includes one or more codes representing particular medical ser-

vices performed by a provider for which payment is being sought. (D.I. 165 at 5) The medical service codes most commonly used are the Current Procedural Terminology codes ("CPT" or "CPT-4" codes) published by the American Medical Association. ('164 patent, col. 2, ll. 21–23) Medical service codes are typically associated with a previously negotiated fee that establishes how much a particular provider will be paid for performing the service represented by the medical service code. (D.I. 165 at 6) Thus, the medical service codes listed on a medical claim determine the amount a service provider should be paid for that claim. (*Id.*)

On occasion, physicians submit medical claims with improper code combinations, either "assigning a higher paying code than a procedure merits, or [ ] unpackaging services that were intended to be bundled into a single code." ('164 patent, col. 2, ll. 8–14) Unbundling medical service codes involves the submission of medical service codes corresponding to individual components of an overall procedure instead of, or in addition to, the single comprehensive code for that procedure, and these procedures should not separately be authorized for payment. (D.I. 165 at 6) Unbundling often results in a higher bill than if the claim appropriately included only the comprehensive code. (*Id.*) In some instances, these code combinations are merely an inadvertent error. In other cases, the physician deliberately submits the code combination in order to secure greater reimbursement for his or her services. (*Id.*) In response to these coding problems, manual techniques were created to allow medical claim reviewers to catch and correct the coding errors in submitted medical claims. ('164 patent, col. 3, ll. 25–29)

### B. The '164 Patent

The '164 patent describes the use of a computer system and method for analyzing medical service codes submitted on a medical claim to detect and correct errors or problems that may result in inappropriate payment. Correction of these errors is done through the use of a knowledge-based computer system that contains a database of medical service codes with relationships among those codes. (D.I. 165 at 6) The asserted claims utilize "a predetermined database containing medical service codes and a set of relationships among the medical service codes" to check and edit the medical service codes on the claim. The relationships define whether it is appropriate to pay the fee associated with medical service codes when submitted for payment with other medical service codes. (D.I. 165 at 7)

Independent claims 1, 3, 13, 15 and 16 describe receiving a medical claim and determining if the medical service codes listed on that claim are "valid." If the codes are not valid, the user is informed of that fact or the codes are simply rejected for payment. Independent claims 2, 10, 12 and 14 describe receiving a medical claim and ascertaining whether the claim contains more than one code. If more than one code is present, the relationships in the predetermined database are used to decide if a particular code is appropriate in combination with the other codes on the claim. The codes found to be appropriate are authorized for payment and codes found to be inappropriate are rejected.

### C. The Accused Products

Plaintiff accuses three defendant software products of infringing the asserted claims of the '164 patent: Facets, Claim-Facts and QicLink ("the accused products"). Plaintiff asserts there is no material distinction among the accused products and that all three of the ac-

cused products infringe the asserted claims.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. DISCUSSION

██ It is plaintiff's burden to prove infringement by a preponderance of the evidence. *SmithKline Diag., Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed.Cir. 1988). When means plus function claims are examined in the infringement analysis, plaintiff must: (1) identify the claimed function of the limitation; (2) identify the corresponding structure in the patent specification that performs the function; (3) perform a function-to-function comparison to see if the accused products have the identical function as the claimed element; and (4) perform a structure to structure comparison to see if the accused products have identical or equivalent structure that corresponds to the claim element. *Medical Instrumentation & Diag. Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed.Cir. 2003); *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211–12 (Fed.Cir. 1998).

### A. Plaintiff's Motion for Summary Judgment of Infringement

Plaintiff moves for summary judgment on claims 3, 6, 15 and 16. The two limitations in dispute are: (1) "predetermined database"; and (2) "means for ascertaining whether at least one claim contains a plurality of medical service codes." Plaintiff argues that defendant's constructions of these terms are incorrect and, therefore, defendant has no defense to infringement. Defendant asserts that the accused products do not contain a "predetermined database" or a "means for ascertaining" under its proposed claim construction.

#### 1. Predetermined database

██ The court used neither party's construction for this claim limitation and instead construed it to mean: "A set of decision-making rules that incorporate a medical code classification system and ex-

pert medical clinical judgment and that are not programmed to be modified by the user."[1] Defendant raises a genuine issue of material fact regarding whether the accused products have a predetermined database under this construction. Plaintiff's motion for summary judgment is denied.

### 2. Means for ascertaining

Plaintiff asserts that under its construction of this limitation, the accused products infringe the disputed claims. · The court adopted a claim construction similar to that proposed by plaintiff. However, defendant argues that, even if the court declines to adopt its proposed claim construction, the accused products do not infringe.

The court construed the limitation "means for ascertaining" as a means plus function limitation with a function of ascertaining whether at least one claim contains a plurality of medical service codes and a structure of hardware and software capable of ascertaining whether at least one claim contains a plurality of medical service codes. Under this construction, the court declines to grant summary judgment for plaintiff because defendant, through Dr. Davis' expert report and deposition, raised a genuine issue of material fact regarding the presence of this limitation in the accused product that plaintiff has not rebutted.

### B. Defendant's Motion for Summary Judgment of Noninfringement

■ Defendant moves for summary judgment that none of the accused products infringe any of the asserted claims. Defendant bases its motion on the premise that plaintiff's experts have not performed a structure to structure comparison between the patent specification and the accused products. Because the court's claim construction for the "means for determining" limitations[2] of the asserted claims incorporates a structure limited to that disclosed in the patent specification, defendant's motion for summary judgment of noninfringement is granted with respect to claims 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15 and 16. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed.Cir.1989)("[An] accused infringer ... is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices.").

The corresponding structure for the "means for determining" limitations is the algorithm disclosed in the patent specification. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed.Cir.2005). Plaintiff has presented two infringement experts,

1. The point of contention between the parties in claim construction was whether the database can be modified by the end users. The court concluded, consistent with the patentee's description of an "expert system," that the predetermined database is not · programmed to be modified by the user.

2. The "means for determining" limitations are: "Means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;" "Means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;" "Means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service codes in the at least one claim;" "Means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database;" and "Means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim."

Dr. Mark Musen and Dr. Margaret Johnson. Neither of these experts compared the algorithms set out in the patent to the accused products. As a result, plaintiff cannot prove infringement of these claim limitations and summary judgment is granted. Summary judgment is denied with respect to claims 1, 2 and 16, which do not contain the "means for determining" limitation.

### 1. Expert report of Dr. Mark Musen

Dr. Musen's report does not include a structure to structure analysis of the algorithm disclosed in the patent and the accused products. Dr. Musen states his understanding that "[r]egarding the various 'means for' elements in the claims, the '164 patent discloses software or a combination of software and hardware as the structure that performs the functions corresponding to these elements." (D.I. 157, ex. B at 8) Dr. Musen goes through each claim and states that the accused products infringe the claim because they perform the same function as set out in the claim and "the structure of the computer system disclosed in the '164 patent for performing the function of each 'means for' element of this claim is included in, or is equivalent to, the structure of each product." (D.I. 157, ex. B) However, Dr. Musen never articulates what specific algorithms are disclosed in the '164 patent corresponding to the "means for determining" limitations. The court has found that merely stating "software" is insufficient structure for these limitations; therefore, Dr. Musen's report is deficient.[3] Furthermore, in the charts attached to his expert report relating to the "means for determining" limitations, Dr. Musen discusses only the function of the accused devices. Because Dr. Musen does not identify the structure in the patent, he necessarily can not, and does not, compare that disclosed structure to the structure in the accused products. As a result, plaintiff has not proven this aspect of infringement.

### 2. Expert report of Dr. Margaret Johnson

Dr. Johnson submitted an expert report wherein she created a five part "algorithm" that she believed encompassed all the functionality of the patent claims. (D.I. 157, ex. I) She then compared this algorithm to the accused products. Dr. Johnson created this algorithm from not only the claims, but also the specification. (D.I. 157, ex. J) As a result, Dr. Johnson did not complete a limitation by limitation comparison of the claims and the accused product.[4] The algorithm does not contain

---

3. Dr. Johnson states that he assumed, based on the court's September 20, 2005 order, that "any software program that performs those functions" would infringe the claim limitations. (D.I. 157, ex. H at 302:16–20) The court's order stated that if "software" was the corresponding structure to a function in a means plus function claim, "the 'software' must **either** be specifically described **or** identified as 'software' known to those of skill in the art.' ... Therefore, plaintiff must supplement its claim construction by identifying those portions of the specification that disclose the correspondence between the software (the structure) and the function disclosed by each claim limitation, as well as the specific algorithm disclosed in the specifica-

tion, or where it is disclosed (or otherwise inferred) that the algorithm/software is known to those of skill in the art." (D.I. 99) (emphasis added) Plaintiff relied on the argument that software was the structure for the claimed functions and the software was known to one of skill in the art. The court has disagreed with respect to the "means for determining" limitations and, therefore, plaintiff is limited to the algorithms disclosed in the specification. Plaintiff's experts neglected to consider this possibility and did not perform the requisite comparison.

4. Dr. Johnson admits that there is no claim to product comparison in her report. (D.I. 157, ex. J at 70:15–17)

the functionality of all the limitations in the claims and none of the claims perform the entire algorithm. Furthermore, she only incorporated the functionality of the claims, as opposed to any structure. Dr. Johnson made no attempt to re-create any disclosed structure in the patent specification, other than software generally. (D.I. 157, ex. J at 42:20–48:9) Nothing in Dr. Johnson's report sets out the appropriate test for infringement of a means plus function claim limitation. Therefore, plaintiff cannot carry its burden of proving infringement of the claims including the "means for determining" limitation.

## V. CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted in part and denied in part. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 5th day of April, 2006, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment (D.I. 164) is denied.

2. Defendant's motion for summary judgment (D.I. 152) is granted in part and denied in part.